**In re Joseph BASHOUR, Debtor.**

**Bankruptcy No. 87–02234.**

United States Bankruptcy Court, N.D. Ohio, W.D.

April 23, 1992.

See also 124 B.R. 52.

Donald G. Mayer, Wapakoneta, Ohio, for debtor.

D. Bowen Loeffler, Port Clinton, Ohio, trustee.

Ronald H. Miller, Wapakoneta, Ohio, for Ted Ruck Co.

William Clark, Findlay, Ohio.

James Pitt, PI Inc., Athens, Tenn.

William P. Biddle, Athens, Tenn.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Creditor's Objection to the Trustee's Renewal of Notice of Intent to Sell Personal Property. At the Hearing, the parties were given the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the written arguments of counsel and the relevant case law, as well as the entire record in this case. Based upon that review, and for the following reasons, this Court finds that the Creditor's Objection should be sustained.

## DISCUSSION

The Court finds the following facts. On July 24, 1984, Mr. Joseph E. Bashour/Debtor [hereinafter "Bashour"] entered into a lease agreement with Ted Ruck Company [hereinafter "Ruck"] whereby Bashour was to pay Twenty-six Hundred Fifty Dollars ($2,650.00) monthly for the use of a Press

and a 16 Cavity Plastic Injection Mold [hereinafter "mold"], which is the subject matter in question. On that same day, Bashour also signed a purchase agreement whereby Ruck would sell the aforementioned items to Bashour no earlier than July 15, 1985, and no later than June 15, 1987. On or about December of 1985, Bashour entered into a division of lease agreement whereby High Quality Plastics of Findlay assumed the Press obligation while Bashour continued payments on the mold.

On September 30, 1987, Bashour individually filed for Chapter 7 Bankruptcy. On April 27, 1988, Bashour entered into a cancellation of personal property lease and purchase agreement whereby Bashour remitted all rights to the mold in question. According to the division of lease agreement, One Thousand Three Hundred Forty-six Dollars and Twenty Cents ($1,346.20) was a monthly lease payment for the mold use, totaling Forty-eight Thousand Four Hundred Sixty-three Dollars and Twenty Cents ($48,463.20).

Additionally, a purchase agreement gave Bashour the right to buy the press and mold at the end of the three (3) year lease period, no later than June 15, 1987. The total purchase price for the 16 Cavity Plastic Injection Mold was Nineteen Thousand Dollars ($19,000.00). Bashour did not exercise the option to purchase.

On April 29, 1988, Ruck filed a replevin action in Hancock County Common Pleas Court against High Quality Plastics, Inc. [hereinafter "Plastics"]. Plastics sought to obtain ownership recovery of the press and mold. The Hancock County Common Pleas Court made a determination as to ownership of the mold and press, despite the fact that Bashour was not a party to the suit. The Third District Court of Appeals overturned the Hancock Court decision, reversing Hancock Court's declaration that Plastics, Inc, was the owner of the mold in question. The Trustee claims that the Appeals Court decision is not applicable, as *inter alia,* he was not joined in the matter. Ruck contends that the Third District Court of Appeals decision that overturned

the Hancock Court decision is dispositive regarding the purchase agreement, lease agreement, and the division of lease agreement.

The issue presented in this case is whether Bashour's payments toward the mold were lease payments or payments in reduction of the purchase price. That is, in making these payments, did Bashour acquire ownership in the mold in question. If so, the mold is estate property, rightfully the trustee's to sell.

The Trustee asserts that the payments were made in reduction of the purchase price and consequently the mold is estate property. The Trustee bases this assertion upon Debtor's 2004 Exam wherein the Trustee claims Bashour stated that he entered into a division of lease agreement which provided that lease option payments were to be made and would in effect reduce the purchase price. The Trustee asserts that the payments totaling Forty-eight Thousand Four Hundred Sixty-three Dollars and Twenty Cents ($48,463.20) were not only sufficient, but in excess of the required purchase price of Nineteen Thousand Dollars ($19,000.00). The Trustee claims that under the Bankruptcy Code, title to the mold vested in him and is rightfully the Trustee's to sell.

Ruck maintains that the agreement was for monthly lease payments of Twenty-six Hundred Fifty Dollars ($2,600.00) for a term of three years ending on June 15, 1987. Additionally, Ruck asserts that a purchase agreement gave Bashour the right to buy the press and mold at the end of the three years by paying Nineteen Thousand Dollars ($19,000.00) for each item. According to Ruck, the total rent payment would then be Ninety-six Thousand Dollars ($96,000.00).

At the hearing, Ruck entered into evidence a "bill of sale" dated July 24, 1984, from which Ruck claimed that it was initially the owner of the mold. The Trustee questioned the validity of the bill of sale. Among other things, the Trustee argued that the conduct of the parties would seem to indicate that the "bill of sale" was not dispositive of the relationship between the

parties because the other documents refer only to a buy-back. Additionally, the Trustee asserted that the intentions of the parties as evidenced by their conduct is contrary to the "bill of sale" and is at odds with the purchase agreement itself. The Trustee noted that the purchase agreement refers to Thirty-six Thousand Dollars ($36,000.00) for the mold and press, whereas the "bill of sale" contained no reference to the press. Additionally, the Trustee pointed out that there were no documents presented which indicate that Ruck was the owner of the press.

Ruck maintained that the "bill of sale" is valid because the dates are synonymous with those on the aforementioned agreements between the parties. Ruck also asserted that the bill of sale merely proves Ruck owned the mold on the same day that he signed an agreement with Bashour, *i.e.* on July 24, 1984. Nevertheless, the Trustee questioned the validity of the document because the lease agreement in question is not reflected in the "bill of sale," which escaped the Bankruptcy discovery process.

This Court does not believe that the "bill of sale" is dispositive beyond what Ruck maintains, *i.e.* that it merely shows Ruck's ownership on July 24, 1984, at the start of this tortured financial arrangement. Notwithstanding the "bill of sale" dated July 24, 1984, this Court finds that there are no other documents clearly determinative of ownership. Granted, Bashour made payments according to his statements at the Debtor's 2004 Exam, however, the Debtor never plainly stated in any of the aforementioned documents that he was the owner of the mold as a consequence of his payments. In fact, in the Debtors' 2004 Exam, to which the Trustee alludes, specifically pages 32 to 38, Bashour merely admits to making payments for the use of the mold. In fact, according to Bashour's statements, he himself believed that the agreement was a lease, not a purchase agreement. On page 34, Bashour stated: "this was just a straightforward lease, the payments were rent, not of that money was applied to the purchase price." On page 36 Bashour stated: "I was sure that he was very careful to write this lease to qualify as a true lease ... no matter what it says down here, as far as I understood it to mean, the Nineteen Thousand Dollar ($19,000.00) was the price that I could buy the mold...."

However, the nominal residual amount of Nineteen Thousand Dollars ($19,000.00) as compared to the extraordinary amount paid since the inception of the agreement appears to indicate that this arrangement was a purchase agreement, not a lease.

Notwithstanding this fact, the Trustee can take no greater rights than the debtor himself. Therefore, if the aforementioned documents are accepted *prima facie* as valid, Bashour had no interest in the mold for the Trustee to rightfully acquire in the estate, *i.e.* no "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Regardless of whether payments were actually made with the intent or purpose to lease or purchase, Bashour remitted all interests, legal or equitable, in the mold when he did not exercise his option to purchase the mold before or on June 15, 1987. Therefore, this Court need not consider the post-petition issue regarding the validity of the Cancellation of Personal Property Lease and Purchase Agreement, dated April 27, 1988, that Bashour signed whereby he apparently cancelled his "right, title and interest in and to the leased property."

This Court is dismayed at the fact that the Debtor contracted to lease or buy over time a mold for such an outrageous price, almost two and one-half (2.5) times the Nineteen Thousand Dollars ($19,000.00) offered purchase price. This agreement is so heavily weighed in favor of Ruck that doubts arise as to its representation as a voluntary and uncoerced agreement. To all outward appearances, this agreement is semblant of an adhesion contract. Obviously, Bashour had no counsel or other versed assistance in the preparation of this agreement. Nevertheless, according to the facts as presented in this case, this Court finds that Bashour had no legal or equitable interest in the mold at the com-

mencement of the case. Because the Trustee can take no greater rights than the debtor himself held, no interests pass to the estate under Section 541. Therefore, the Creditor's Objection should be sustained.

In judging the credibility of the witnesses, this Court has taken into consideration the witnesses' intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence of the case, and any interest, bias, or prejudice the witnesses may have. In reaching these conclusions, this Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that the Trustee has no interest in the mold to sell.

It is FURTHER ORDERED that the Creditor's Objection to Trustee's Notice of Intent to Sell be, and is hereby, sustained.